# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Crim. No. 13-571** |
| | : | |
| THOMAS RAFFERTY | : | |
| | : | |

---

**Diamond, J.**                                                                              **July 8, 2014**

## MEMORANDUM

Thomas Rafferty has been charged with three counts of employing a child to produce pornographic images, five counts of producing visual representations of the sexual abuse of children, and one count of possession of material involving the sexual exploitation of children.  18 U.S.C. §§ 2251(a), 1466A, 2252(a)(4)(B); (Doc. No. 13.)  On August 8, 2013, Homeland Security Investigations Agents searched Defendant's home pursuant to a Warrant and twenty page supporting Affidavit that included the following averments: 1) Defendant had, from 1999 to 2004, sexually molested, tied up, and photographed naked two of his prepubescent step-granddaughters; 2) Defendant had, two weeks before the Warrant issued, visited at least five websites that featured, *inter alia*, child pornography and child exploitation materials or tools for sharing them; and 3) one of the victimized step-granddaughters feared that Defendant was presently molesting his great-grandchildren and his two-year-old autistic step-granddaughter, all of whom frequented Defendant's home.

After the Agents arrived at Defendant's home, he told them that he was interested in child pornography and that they would find child pornography on his computer.  The Agents recovered from Defendant's computer thousands of images, some depicting naked prepubescent girls, others edited by Defendant to depict him committing graphic acts of oral and anal sodomy and torture on his naked step-granddaughters.  I will deny Defendant's Motion to Suppress the images and his

statement.

## BACKGROUND

### I.    The Instant Motion

In asking me to exclude "all physical evidence seized from his home" and the statement he made to HSI Agents, Defendant argues that "the Warrant authorizing the search was not supported by probable cause [and that] Mr. Rafferty's statement was the direct fruit of this unlawful search." (Def.'s Mot. to Suppress, Doc. No. 28, at 1.)  Defendant also seeks "an evidentiary hearing pursuant to Franks v. Delaware, so that he can explore "misrepresentations and material omissions" in the Warrant." Id.; 438 U.S. 154 (1978).

### II.    Suppression Hearing

On June 10, 2013, I conducted a hearing on Defendant's Motion.  The prosecutor asked me to deny suppression without requiring him to call any witnesses because Agent Krick's Affidavit made out probable cause to search Defendant's home.  The Government argued correctly that Defendant was not entitled to a Franks hearing (at which he could challenge the Affidavit's accuracy and attack the Affiant's credibility).  Defendant presented little more than conclusions and speculation to support his request for a Franks hearing.  The Franks Court itself made clear that this is insufficient:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171.

Defendant's failure to meet this threshold notwithstanding, in an abundance of caution, I granted his request for a Franks hearing, thus allowing him wide-ranging cross-examination of Agent Krick and the right to present evidence that her Affidavit included "deliberate falsehood[s]"

or reflected her "reckless disregard for the truth." Id.; (Hr'g Tr. 3, 18, 39, 47-64.)  Defendant called

no witnesses, however, and limited his "Franks" presentation to his cross-examination of Agent

Krick.  (Hr'g Tr. 46.)

At the conclusion of the June 10 hearing, I denied Defendant's Suppression Motion, ruling

that the search of Defendant's home was supported by probable cause.  In the alternative, I denied

the Motion because the Agents acted in good faith in executing the Warrant.  Finally, I found that

Defendant had not shown that he was entitled to relief under Franks.  I stated that I would issue this

Memorandum in which I set out my findings and conclusions.  (Hr'g Tr. 65.)

## **FINDINGS OF FACT**

I credit the testimony of Agent Krick, whose veracity Defendant conceded at the

conclusion of the suppression hearing.  (Hr'g Tr. 57.)  Pursuant to Federal Rule of Criminal

Procedure 12(a), I find that the Government has proved the following facts by a preponderance of

the evidence.

### I.        **Victims 1 and 2**

On April 13, 2013, Victim 1 (a 19-year-old Marine stationed at Camp LeJeune) told the

Naval Criminal Investigative Service that from 2000 through 2003 (when she was between 6 and 9

years of age),  Defendant—her step-grandfather—took photographs of her naked in the attic of his

Philadelphia home.  Aff. ¶¶ 15, 16.  Victim 1 reported that on one occasion, Defendant took her into

his bedroom and exposed his genitals to her.  Id. at ¶ 17.  Victim 1 told investigators that Defendant

had also taken photographs of her sister (Victim 2) naked when she was a child.  Id. at ¶ 18.

On May 14, 2013, Victim 1's statement was transmitted to HSI's Philadelphia Office, where

it was reviewed by Agent Krick, a six-year veteran of HSI's Child Exploitation Group.  Id. at ¶ 14;

(Hr'g Tr. 5-6.)  Accompanied by HSI Agent Kimberly Caraway, Agent Krick met with 18-year-old

Victim 2 in Levittown, Pennsylvania, and later interviewed Victim 1.  Id. at ¶ 20.  Victim 2 said that from 1999 through 2004 (when she was between 4 and 9 years of age), Defendant took photographs of her naked.  Id. at ¶ 21.  She reported that during these five years, she stayed at Defendant's residence every other weekend, and was made to sleep on a mattress on the floor next to Defendant's bed.  Id.  At night, Defendant brought Victim 2 into his bed, laid her on top of him, and hugged her tightly.  Id.  Although they were both clothed, Victim 2 felt that Defendant became aroused by pressing against her.  Id.  Defendant put his hands down Victim 2's pants and felt her genital area, on one occasion whispering in her ear, "I did it with a nine year old once and she liked it."  Id.  Defendant continually "groom[ed]" Victim 2, buying her "whatever she wanted."  Id. at ¶ 24.  When Victim 2 was nine, she told Defendant that she no longer wanted to sleep in his bed, and the "sleepovers ceased."  Id. at ¶ 21.

Victim 2 stated that several times during those five years, Defendant took her and her cousin—Victim 3—up to his attic where he took pictures of them naked.  Id. at ¶ 22.  Defendant told the young girls that they were playing a game, and that wearing clothing would ruin the photographs.  Id.  Before taking the pictures, Defendant posed the girls without clothing: he bound their hands over their heads and then tied them to the attic rafters.  Id.  Defendant spun Victims 2 and 3 around while they were tied up and hanging.  Id.  When Victim 2 was nine, Defendant took her into his house and repeatedly directed her to take off the top of her wet bathing suit.  Id. at ¶ 23.  When he became more insistent, Victim 2 ran from the room.  Id.

During this time, Victim 2 learned that Defendant had digitized the photos he had taken of her.  Using a "big, old and tan" computer, he showed Victim 2 photographs of: 1) her and Victim 3 naked and tied to the attic rafters, 2) her and Victim 3 naked on the bathroom floor with their hands over their heads.  Id. at ¶ 25.

Defendant moved to Levittown, Pennsylvania sometime before January 2011.  Id.  Victim 2

told the Agents that in January 2011 she saw the "big, old, and tan" computer in Defendant's Levittown home.  Id.  Victim 2 lived with Defendant at the Levittown address between May 2011 and November 2011.  Id. at ¶ 26.  She told the Agents that although Defendant had a newer laptop, Defendant's wife continued to use the old, tan computer for religious work.  Id.  Victim 2 believed Defendant still possessed the old computer because her "grandparents don't get rid of stuff."  Id. at ¶ 25.  Victim 2 said that Defendant told Victim 1 before she left for the Marine Corps that she was his "favorite granddaughter because she was the only one that still had her innocence."  Id. at ¶ 27.

Victim 2 told the Agents that she came forward to support her sister and to prevent Defendant from molesting other children.  (Hr'g Tr. 10-11.)  Both Victims 1 and 2 reported that Defendant lived with his wife, his daughter, her husband, and Defendant's granddaughter, who was pregnant at the time.  (Hr'g Tr. 9-10.)  Defendant's Levittown home was thus frequented by Defendant's great-grandchildren and his 2 year-old autistic step-granddaughter.  Id.; Aff. ¶ 28. Victim 2 was apprehensive that Defendant was molesting these children.  Aff. ¶ 28.

With a "sense of urgency," Agent Krick consulted with Assistant United States Attorney Michael Levy and a obtained a Court-ordered "pen register" for Defendant's Verizon account. (Hr'g Tr. 18 ("I felt there was a sense of urgency because there were children that were potentially in this home.")); see also Aff. at ¶¶ 29, 30; (Hr'g Tr. 10-12.)  A pen register could be obtained quickly, and allowed HSI to monitor, inter alia, the "Internet Protocol" addresses visited on the account registered to "subscriber Thomas Rafferty" at his Levittown home.  Aff. ¶ 30; (Hr'g Tr. 12, 16-18.)  Each visit to a website necessarily triggered an "exchange of data" between Defendant's Verizon account and the site visited on the account.  (Hr'g Tr. 23-24.)  HSI Intelligence Research Analyst Jeffrey Smith analyzed that activity occurring from July 18 to July 26, 2013.  Aff. ¶ 30; (Hr'g Tr. 13-15.)  As explained below, Defendant's Verizon account showed repeated data exchanges with sites (three of which were based in the Netherlands) that HSI had encountered in

other child pornography investigations: 20 exchanges of data with www.asstr.org; 7 exchanges of data with www.imagefap.com; 14 exchanges of data with www.xxxbunker.com; 19 exchanges of data with www.proscribedsites.com; and 4 exchanges of data with www.ares.net. Aff. ¶¶ 30(a)-(e); (Hr'g Tr. 17-18.) Each of the data exchanges occurred over a series of days, suggesting that there was more than one visit to each site. Aff. ¶¶ 30(a)-(e); (Hr'g Tr. 15.)

## II. <u>The Warrant and Supporting Affidavit</u>

In early August 2013, Agent Krick, again consulting with AUSA Levy, prepared an Affidavit that included, *inter alia*, the information that Victims 1 and 2 had provided, along with the following descriptions—based on the Agent's personal knowledge—of the websites that exchanged data with Defendant's IP address from July 18 to July 26, 2013: 1) asstr.org is a site "containing descriptions of sexual fantasies, including those involving the sexual abuse of children"; 2) imagefap.com "is a website that allows image sharing and . . . is often used for the purpose of viewing and or sharing child exploitation material"; 3) xxxbunker.com is "a website that allows image sharing and . . . is often used for . . . viewing and or sharing child exploitation material"; 4) proscribedsites.com is "a website depicting images of incest, rape, bondage and forced sex with drugged (incapacitated) young teen girls"; and 5) ares.net is "used for Peer-to-Peer . . . file sharing." <u>Id.</u> ¶¶ 30a-e. Agent Krick also averred that four of these sites (all but proscribedsites.com) were connected with other HSI child pornography and child exploitation investigations. <u>Id.</u>

The Affidavit also included a description of the Agent's investigative experience as well as the extensive information "common to individuals" who collect child pornography learned by Agent Krick and other HSI Agents over the course of their investigations:

> Individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer . . . These collections are often maintained for several years and are kept close by, usually at the

collector's residence, to enable the individual to view the collection, which is valued highly.

Id. at ¶¶ 1, 2, 31, 31(d).   The Agent further noted that "individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period."   Id. at ¶ 31(f).   Indeed, such individuals "almost always possess and maintain their "hard copies" of child pornographic material.   Aff. ¶ 31(c).   She averred that:

> Those that receive, possess, and collect child pornography maintain their collection and material even if they move physical, geographic locations.   A collector and user of child pornography who maintains the images and videos in a digital or electronic format, such as on a computer, discs, external hard drive, thumb drives, etc., will take the materials to a new location in the event of a physical move.

Id. at ¶ 31(g).

Agent Krick also included information about how "computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized." Aff. ¶ 13(a).   Using computers, producers and viewers of child pornography can create, transfer, and store thousands of images at high resolution.   Id. at ¶ 13(e).   Agent Krick averred that "a computer user's Internet activities generally leave traces . . . in the web cache and history files of the browser used.   Such information is often maintained indefinitely until overwritten by other data."   Id. at ¶ 13(h).

Finally, the Agent included information confirming the pressing nature of her investigation:

> Victim 2 stated to Agents that her reason for coming forward now is to support her sister [i.e. Victim 1] and protect any future children from [Defendant's] abuse.   Victim 2 fears that [Defendant] has or would abuse or photograph more children and explained that he has access to several great grandchildren as well as a 2 year old step-granddaughter with autism.

Aff. ¶ 28.

### III.      The Warrant and Supporting Affidavit is Approved and Executed

The Magistrate Judge approved the Warrant on August 6, 2013.  (Hr'g Ex. 3.)  On August 8, 2013, HSI executed the Warrant.  Defendant told the Agents that: 1) he has visited websites containing child pornography, 2) he edits pictures of adults and children; 3) the Agents would find images of Victim 1 and other child pornography images on his external hard drive; and 4) for the past fifteen years, he had fantasized about sexual contact with children.  Id.  The Agents recovered the following images:

1.   A photograph of Victim 1 when she was a young child, on a bed, smiling, with her legs spread widely;

2.   A close-up photograph of Victim 2's genitals, held open by an adult's hands (subsequently determined to be Defendant's);

3.   A picture of Victim 3 when she was a young child, sleeping, with her shirt pulled over her head, her legs spread widely, and her underwear pulled down to her knees;

4.   Three images that were edited to depict Defendant having anal and oral sex with his naked, prepubescent step-granddaughters; and

5.   An image that was edited to depict Defendant torturing his naked, prepubescent step-granddaughter.

(Hr'g Exs. 5, 6, 6A, 7, 8.)  The Agents also recovered "thousands of images of child erotica, animated child pornography, and child pornography" from Defendant's external hard drive.  (Doc. No. 1 ¶ 18.)

### IV.      Franks Hearing

As I have described, over the Government's vigorous objection, I afforded Defendant a hearing pursuant to Franks v. Delaware.   438 U.S. 154 (1978); (Hr'g Tr. 3, 18, 39, 47-64.)

Defendant presented no witnesses and introduced no evidence.  Rather, he based his challenge to the Affidavit entirely on his cross-examination of Agent Krick.  (Hr'g Tr. 41-42, 46.)  As I describe below, Defendant argues under <u>Franks</u> that "material omissions" in the Affidavit respecting the websites defeated any inference that Defendant's very recent visits to those sites helped establish probable cause that he possessed child pornography.  In light of this contention, I am obligated to summarize the evidence the Government presented in response: screenshots of four website homepages that Defendant visited from July 18 to July 26, 2013.  (Hr'g Ex. 4.)  Agent Krick testified that three of the websites required a user name and password.  (Hr'g Tr. 19.)  She also testified that the sites:

> provided the opportunity to go to other websites, also containing pornography.  There were advertisements on these sites for young teen, incest, things of that nature.  In the advertisements, these images did depict pornography.  Some of them were just images.  Other sites had videos containing pornography right there on the site that you did not need to provide payment for or a user name and password.

(Hr'g Tr. 19-20.)  The screenshots of asstr.org revealed that it is a "free" website, including information and stories about sexual fantasies.  Agent Krick averred and testified that these fantasies included the sexual violation of children.  Aff. ¶ 30(a); (Hr'g Tr. 25-26.)  The imagefap.com homepage offers "free porn pics on the biggest adult hoster."  The homepage includes, under the heading "free porn pics," the following entry: "You want to see more Perfekt [sic] young teens?  Ok at the next time I will post lot of Pics . . . You like nice NN teens?" The imagefap.com homepage also provides links to search members by their interests, including "teens," "mature," "bondage," "teen," "incest," "girls," and "young."  The xxxbunker.com homepage includes a photograph of a young girl's face apparently pasted on to the photograph of a buxom, naked, female body stating, "want to fuck these girls?" along with a number of graphic pictures of very young looking females.  The proscribedsites.com homepage provides links to "brutal teen

sites: young girls brutally raped, cruel movies and forced sex": 1) "drugged assault: . . . a brand new site that takes you on a ride into the shocking world of forced sex with drugged girls.  This is inhumanely cruel because these babes are not even given the chance to fight it off.  They are drugged and then big dicks are forced into their virgin holes!"; and 2) "forced sex DB, a brand new, shocking forced sex site . . . Hottest babes and most innocent teens are being fucked against their will by cruel and violent men who don't care about the consequences."    Next to these descriptions are images of young girls, bound and drugged, some naked and being raped.  Proscribedsites.com also contains advertisements for "rape videos club" and "Incest3D.com"    (Hr'g Ex. 4.)

## CONCLUSIONS OF LAW

"The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search."   United States v. Sczubelek, 402 F.3d 175, 182 (3d Cir. 2005) (citing United States v. Knights, 534 U.S. 112, 118 (2001)).  Generally, the Fourth Amendment requires police to conduct a search pursuant to a warrant based "upon probable cause, supported by Oath or affirmation" in order to be reasonable.  United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (quoting U.S. Const. amend IV).

Review of a magistrate's probable cause determination is necessarily deferential.  Illinois v. Gates, 462 U.S. 213, 236 (1983); United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010).  The court must "uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found" in a particular place.  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (internal citations omitted).  Such deference is not, however, a "rubber stamp."  United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quoting United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993) (internal citations omitted)).

"Probable cause is a 'fluid concept that 'turn[s] on the assessment of probabilities in particular factual contexts.'"  Stearn, 597 F.3d at 554 (quoting Gates, 462 U.S. at 232).  In deciding

whether probable cause exists, the court must weigh "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. (quoting Gates, 462 U.S. at 231). "Statements in an affidavit may not be read in isolation—the affidavit must be read as a whole." Whitner, 219 F.3d at 296 (quoting Conley, 4 F.3d at 1208).

**I.** **The Warrant to Search Defendant's Home Was Supported by Probable Cause**

Characterizing the Krick Affidavit as a compilation of "benign allegations," Defendant argues that: 1) Agent Krick's description of the photographs Defendant took of the prepubescent girls did not establish probable cause to believe that the images were likely child pornography; 2) the Affidavit did not establish a nexus between Defendant's likely possession of child pornography and Defendant's Levittown home; and 3) the Search Warrant was invalid because it was based on "stale" information. (Def.'s Mem. at 3.)

*A. There was Probable Cause to Believe that the Images Were Likely Child Pornography*

As I have described, Agent Krick averred that Victim 2 told her that Defendant took photographs of two of the child victims naked and tied to the attic rafters, and that Defendant later showed these photographs to Victim 2. Aff. at ¶¶ 22, 25. Agent Krick also averred that Victim 2 said Defendant showed her another picture of her and Victim 3 naked on a bathroom floor with their hands over their heads. Id. at ¶ 25. Defendant protests that the "magistrate judge . . . never viewed the photographs" Defendant took of his step-granddaughters, and that Agent Krick's description of the images "does not necessarily indicate that the photos were pornographic." (Def.'s Mem. at 2.) I do not agree.

Child pornography is a visual depiction of a minor engaging in "sexually explicit conduct." 18 U.S.C. § 2256(8). This was the definition Agent Krick employed in her Affidavit. Aff. ¶ 12(b). By statute, such "conduct" includes images of "lascivious exhibition of the genitals or pubic area."

§ 2256(2)(A)(v); Aff. ¶ 12(d).   The Third Circuit has adopted the six-factor <u>Dost</u> test for determining whether an image includes a "lascivious exhibition of the genitals":

> 1) whether the focal point of the image is on the child's genitalia . . . ; 2) whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose . . . considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the image suggests sexual coyness or a willingness to engaged in sexual activity; 6) whether the image is intended or designed to elicit a sexual response in the viewer.

<u>United States v. Villard</u>, 885 F.2d 117, 122 (3d Cir. 1989) (quoting <u>United States v. Dost</u>, 636 F. Supp. 828, 831 (S.D. Cal. 1986)).   A qualifying image will satisfy more than one factor, but need not satisfy all.  <u>Id.</u>

The Agent's description of the images certainly made out probable cause that the images were child pornography, meeting four of the six <u>Dost</u> factors.   The Affidavit provides that in the photographs, Victims 2 and 3 were naked.  (Factor 4).  That they were bound and tied to the attic rafters confirms that "the child is depicted in an unnatural pose."  (Factor 3).   The Agent's description of the children strongly suggests depictions of bondage, which is "sexually suggestive." (Factor 2).  <u>See, e.g.</u>, <u>United States v. Walton</u>, 255 F.3d 437 (7th Cir. 2001) (describing image of prepubescent girl blindfolded and hung from ceiling as "sexually explicit" or "lascivious"); <u>see also</u> <u>United States v. Rogers</u>, 423 F.3d 823 (8th Cir. 2005) (describing as "sexually explicit" images of children bound by ropes).   The Affidavit sets out in considerable detail Defendant's years-long sexual obsession with his step-granddaughters—exposing himself to Victim 1, becoming aroused by holding Victim 2 close to him, and touching Victim 2's genitals.   Plainly, the photographs Defendant took of these same, small girls—naked, bound, hanging from the attic of Defendant's home—were "intended to elicit a sexual response from the viewer," Defendant himself.  (Factor 6). <u>United States v. Larkin</u>, 629 F.3d 177, 184 (3d Cir. 2010) ("A photograph that is intended to elicit a sexual response is one that is presented by the photographer as to arouse or satisfy the sexual

cravings of a voyeur.") (internal citation omitted); United States v. Strausbaugh, 534 F. App'x 175, 178 (3d Cir. 2013) (the sixth Dost factor was present where photographs were taken for personal use); see also United States v. Dennington, No. 07-43, 2009 WL 2591763, at *21-22 (W.D. Pa. Aug. 21, 2009) aff'd, 399 F. App'x 720 (3d Cir. 2010) (inclusion in affidavit of other related activities, including prior molestation, raised probable cause that images described only as "lascivious" were child pornography); United States v. Hill, 459 F.3d 966, 971 (9th Cir. 2006) ("[I]n issuing the search warrant, the magistrate had to a make a practical, commonsense decision, based on the totality of the circumstances presented to him in the affidavit, that there was a 'fair probability' that the images were lascivious.").

In thus meeting four of the six Dost factors, the Affidavit makes out a "fair probability" that the naked images of the prepubescent Victims were sexually explicit and thus pornographic.

B.  *The Affidavit Sets Forth a Sufficient Nexus to Defendant's Levittown Home*

Because Defendant moved to his Levittown home some seven years after he last photographed his step-granddaughters, Defendant argues that Agent Krick's Affidavit provides no "nexus" between the Levittown home and Defendant's likely possession of child pornography. I do not agree.

"Evidence linking a crime to the location to be searched is not required to establish probable cause." United States v. Epps, No. 12-150, 2012 WL 6107102, at *3 (E.D. Pa. Dec. 10, 2012) (citing United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002)). "[A] magistrate judge may infer probable cause from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide . . . evidence.'" Stearn, 597 F.3d at 554 (internal citation omitted).

Even if a "nexus" were required, the Affidavit provides such a link between child pornography and Defendant's Levittown home. The Affidavit established that: 1) from July 18 to

July 26, 2013, someone using Defendant's Verizon account in his Levittown home had logged on to five sites that catered, *inter alia*, to viewers of child pornography; 2) in the past year, Defendant had told Victim 1 that she was "'his 'favorite granddaughter because she was the only one that still had her innocence'"; 3) Victim 2 had seen photographs Defendant had taken of her on the "big, old, and tan" computer; 4) Victim 2 had seen the computer in Defendant's Levittown home in January 2011; 5) Victim 2 believed that Defendant still had the computer; 6) individuals who possess child pornography rarely, if ever, dispose of their materials because they are difficult to obtain; and 7) Defendant's evident sexual obsession with his step-granddaughters—photographing and molesting them over a five year period when they were still young girls—made it even less likely that he would dispose of the photographs of them he had so deliberately posed and taken.   These facts, taken together, establish a "nexus" between Defendant's Levittown home and the likelihood that child pornography would be found there.   See United States v. Prideaux-Wentz, 543 F.3d 954, 961 (7th Cir. 2008) (agent could have reasonably believed that evidence of child pornography would be found in new home "based on [defendant's] computer usage and the fact that most child pornographers do not dispose of their collections"); United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007) (although pornographic images were taken at defendant's old home, it was reasonable to infer that he would retain the materials after his move); Epps, 2012 WL 6107102, at *4 (defendant's move did not eliminate nexus to his new home); United States v. Clark, No. 10-30221, 2011 WL 1343029, at *3 (S.D. Ill. Apr. 7, 2011) ("[The police] averred that possessors of child pornography often hoard their collections over long periods of time, so it was probable that [the defendant] had child pornography at his new address.") see also United States v. Vosburgh, 602 F.3d 512, 526-27 (3d Cir. 2010) ("The unique nature of the IP address assigned to [defendant] . . . made his attempts to access the Link fairly traceable to his Comcast account and the physical address to which that account was registered.").

C.  *Agent Krick's Warrant Was Not "Stale"*

In evaluating whether a warrant is based on sufficiently recent information, the Third Circuit has cautioned that:  "Age alone . . . does not determine staleness . . . Rather, [courts] must also examine the nature of the crime and the type of evidence."  United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002) (internal citations omitted).  Evidence of child pornography "has a relatively long shelf life.  It has not been and shall not be, quickly deemed stale."  Vosburgh, 602 F.3d at 529; see also id. at 528 ("As the affidavit explained, and as we have long recognized, persons with an interest in child pornography tend to hoard their materials and retain them for a long time."); compare United States v. Eberle, 266 F. App'x 200, 206 (3d Cir. 2008) (upholding affidavit for child pornography search based on three-and-a-half-year-old information); and United States v. Prawdzik, 484 F. App'x 717, 723 (3d Cir. 2012) (same for information that was at least three years old); and United States v. Riccardi, 405 F.3d 852, 860-61 (10th Cir. 2005) (same for five-year-old information) with Zimmerman, 277 F.3d at 433-36 (information stale where it appeared that the defendant collected adult pornography and there was no evidence or allegation that defendant collected child pornography).  Evidence of child pornography is particularly durable when it is stored on a computer.  Vosburgh, 602 F.3d at 529 ("Images stored on computers can be retained almost indefinitely, and forensic examiners can often uncover evidence of possession or attempted possession long after the crime has been completed.").

In arguing that the Warrant was based on "stale" information, Plaintiff suggests that the supporting affidavit provided little more than that "between 10 and 13 years ago, [Defendant] took nude photographs of [his step-granddaughters] in the attic of his Philadelphia home."  (Def.'s Mem. at 14.)  This is simply incorrect.  As I have explained, the Affidavit included the following information: 1) less than two weeks before Agent Krick applied for the Warrant, someone using Defendant's Verizon account in his Levittown home visited five websites that provided child

pornography and child exploitation materials; 2) HSI had encountered four of these sites in its previous child exploitation investigations; 3) two months before, Victim 2 told HSI that she believed Defendant still had the computer in his home; 4) a year before the search, Defendant confirmed that he remained obsessed with his step-granddaughters, telling Victim 1 that she was his favorite because she "still had her innocence"; 5) two and a half years before, Victim 2 saw in Defendant's Levittown home the "big, old, tan" computer on which Defendant had displayed the photographs he had taken of her; 6) Defendant had a prolonged obsession with his prepubescent step-granddaughters, photographing and molesting them over a five-year period; 7) most collectors of child pornography retain their materials for extended periods and keep them close by; and 8) Defendant continued to have access to several young great-grandchildren and a two-year-old autistic step-granddaughter.

Taken together, these facts describe a pedophile who, over a decade and a half—and as recently as two weeks before the search—had iterated and reiterated his obsession with both child pornography and his step-granddaughters.  In these circumstances, the information on which HSI based the Search Warrant was not stale.  See Prawdzik, 484 F. App'x at 723 (warrant was not stale where affidavit included information about: six-year-long abuse of the victim, which defendant recorded in videos and photographs that were scanned to his computer; defendant's recent telephone contact with victim; and information that individuals interested in child pornography tend to retain such material for extended periods); Vosburgh, 602 F.3d at 528 (rejecting staleness challenge because totality of facts, including information about child pornography collectors, established probable cause); United States v. Cintron, 243 F. App'x 676, 679 (3d Cir. 2007) ("[S]tale information can be refreshed with newer information that related back to the subject of the older information."); United States v. Urban, 404 F.3d 754, 774 (3d Cir. 2005) ("Where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the

passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance.").

## II.     The Agents Acted in Good Faith

I conclude in the alternative that even if the Krick Affidavit did not make out probable cause, I will not suppress because HSI acted in good faith reliance on the Search Warrant.

"Suppression of evidence is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001) (internal citation omitted). Where "a reasonably well trained officer would not have known that the search was illegal despite the magistrate [judge's] authorization," the court should refuse to suppress. Id.; Prideaux-Wentz, 543 F.3d at 959 (warrant based on stale information saved by the agent's good faith). Defendant relies on two exceptions to this rule, arguing that: 1) the Warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and 2) the Magistrate Judge issued the warrant in reliance on a deliberately or recklessly false affidavit. Hodge, 246 F.3d at 308. Again, I do not agree.

### A. Indicia of Probable Cause

As I have described, in her twenty-page Affidavit, Agent Krick provided detailed information about the photographs Defendant took of Victims 2 and 3; his years-long, repeated molestations of Victims 1 and 2; the likelihood that he still had his old computer; the repeated exchanges of data between his IP address and four websites associated with HSI child exploitation investigations; Defendant's continuing sexual obsession with Victim 1; and Victim 2's concern for the children visiting Defendant's home. Agent Krick consulted with Mr. Levy, a vastly experienced prosecutor, before presenting the Warrant and Affidavit to the Magistrate Judge. (Hr'g Tr. 16.) It is difficult to imagine what more Agent Krick could or should have added to her Affidavit, especially

given the gravely concerning circumstances described by Victim 2.  (See Hr'g Tr. 17-18 (weeks or months would have been required to obtain  a "Title III" wiretap of Defendant's Verizon account or to investigate the foreign based websites visited on that account)); see also United States Attorneys Criminal Resource Manual, 9-7.000.   In any event, I certainly cannot say that it was "entirely unreasonable" for HSI to rely on the Warrant.  Dennington, 399 F. App'x at 724 (upholding a search warrant providing only that the defendant posted a link to a group that traded child pornography, without any indication that the defendant ever joined the group or the accessed its child pornography images); see also United States v. Falso, 544 F.3d 110, 114, 129 (2d Cir. 2008) (affidavit providing that the defendant "appeared to have either gained access or attempted to gain access to the . . . website" and that the website revealed that defendant was possibly a member did not render affidavit "so lacking in indicia of probable cause").  Accordingly, HSI's reliance on the Warrant was reasonable.

### B.   The Affidavit Was Not Deliberately or Recklessly False

Finally, Defendant argued that he was entitled to a Franks hearing to show that the Agents did not act in good faith because Agent Krick's Affidavit was deliberately or recklessly false.  438 U.S. 154.

As I have discussed, over the Government's objection, I allowed Defendant a Franks hearing even though he had made virtually no threshold showing.  United States v. Snow, 228 F. App'x 203, 205 (3d Cir. 2007) ("'Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.'" (quoting Franks, 438 U.S. at 155-56)).  Yet, Defendant presented no evidence in support of his Franks allegations.  Rather, he relied solely on his cross-examination of Agent Krick to show the following "material omissions" in her Affidavit: 1) asstr.org features erotic stories primarily about adults and no images; 2) imagefap.com requires membership, and without payment, a user cannot access the image sharing portion of the website; 3)

imagefap.com includes a disclaimer that child pornography is illegal; 4) xxxbunker.com does not allow file sharing without payment; 5) proscribedsites.com is a pay site that is more akin to a search engine than a host of child pornography; and 6) ares.net allows for sharing a wide range of files, and there is no evidence in the Affidavit that Defendant shared any files on the site.  (Def.'s Mem. at 32-35.)

The "omission" of these details from Agent Krick's Affidavit was neither "material" nor "misleading."  On the contrary, review of the Affidavit confirms that Agent Krick was careful not to misstate or overstate.  At the outset, the Agent noted that she had not included in the Affidavit every detail from the HSI investigation.  Aff. ¶ 4.  She did not aver that it was certain that Defendant had viewed child pornography.  Rather, she stated that the pen register allowed HSI to determine only which sites were visited on Defendant's Verizon account.  She also averred that she knew the sites featured, *inter alia*, child pornography because Agent Krick was familiar with the sites, which  HSI had encountered in other child exploitation investigations.  The Agent thus averred that Defendant's "production of child pornography in the past, as well as his sexual abuse of those children makes it more likely that when he visited the websites . . . he was viewing and downloading child pornography."  Aff. ¶ 32.  In thus explaining why she believed probable cause existed to search Defendant's home, Agent Krick acted properly.  Compare Affidavit with United States v. Flake, 30 F. App'x 736, 737-38 (9th Cir. 2002) (defendant entitled to a Franks hearing where agent falsely averred that the defendant had a prior child molestation conviction, and the supporting affidavit otherwise provided only that the defendant closed his computer screen quickly when police approached him).

The Krick Affidavit includes a detailed description of the electronic means by which a user accesses and exchanges data with a web site.  Aff. ¶¶ 12 (g), (h), (i), (j), (k), (l).  Defendant nonetheless argues that the Affidavit was "misleading" because Agent Krick failed to distinguish

between "data exchanges"—which occur whenever a user logs onto a site—and "information downloads."  Defendant alleges that the sites on Defendant's pen register require a user to provide credit card information to download images.  Because Defendant purportedly did not provide that information, he purportedly did not download any images from these sites.  Defendant thus believes that it was "misleading" for Agent Krick to suggest in her Affidavit that Defendant had accessed child pornography from sites when she "knew" that he had not downloaded any data from them.  Once again, Defendant offers no evidence in support of this argument.  Moreover, as Defendant concedes and I have described, Agent Krick did not aver that Defendant had downloaded or merely viewed images.  (Def.'s Mem. at 21 ("[T]here is no specific allegation that Mr. Rafferty accessed, viewed, subscribed or downloaded child pornography from any of the websites he is accused of visiting in July 2013.").)  Indeed, the Agent testified that she could not determine from Defendant's pen register whether he had downloaded images.  (Hr'g Tr. 18.)  Rather, as I have discussed, the Agent averred only as to the likelihood that Defendant had accessed child pornography.  The Government's rebuttal evidence at the <u>Franks</u> hearing confirmed the accuracy of the Agent's averral.  It is undisputed that Defendant accessed the homepages of all five websites.  As I have described in painful detail, these pages abound with graphic images and descriptions of child pornography and child exploitation.  Accordingly, there was nothing "misleading" about the Krick Affidavit.  She correctly suggested that by logging on to these sites, it was likely that Defendant accessed child pornography and links to similar sites.

Finally, Defendant argues that Agent Krick failed to note in her Affidavit Victim 1's statement that Defendant showed her images of herself on his computer, and that at her request, Defendant said he deleted them.  Once again, this omission is not material, especially because Victim 1 also told the Agent that she did not believe Defendant when he stated that he had deleted the images.  Rather, she believed (correctly) he had saved the images to disk.  (Hr'g Def. Ex. 1;

Hr'g Tr. 41-42.) Had Agent Krick included Victim 1's complete statement, it would only have added to the probable cause set out in the Affidavit.  This omission was thus neither "material" nor misleading.

## CONCLUSION

I am obligated to look at the totality of the circumstances encountered by HSI and determine if the Agents acted reasonably.  United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011) (quoting Gates, 462 U.S. at 238).   Contrary to Defendant's suggestion, those circumstances were not limited to his molesting and photographing naked prepubescent girls from 1999 to 2004.  On the contrary, HSI Agents compiled evidence that from 1999 through days before this search, Defendant repeatedly displayed a consuming interest in sexual contact with and sexual images of children. Indeed, one of Defendant's victims feared that this continuum of behavior was ongoing.  Those circumstances plainly made out probable cause to believe that Defendant had child pornography in his home.  Moreover, the record shows that the Agents exercised good faith in compiling the Warrant, seeking its approval, and executing it.

Defendant's Motion to Suppress is denied.

An appropriate Order follows.

July 8, 2014

/s/ Paul S. Diamond
_____
Paul S. Diamond, J.