IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| V. | : | CRIMINAL NO. 13-571 |
| THOMAS RAFFERTY | : | |

GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

The defendant has agreed to plead guilty to Count One of the Indictment, charging him employing, using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual image of that conduct, in violation of 18 U.S.C. § 2251. This charge arises from the defendant's conduct in taking pictures of minor girls between the ages of six and nine, while they were naked, displaying their genitals, from his "morphing" many of those images into obscene materials, and from his possession of images of minors engaging in sexually explicit conduct. The government submits this memorandum to the Court to outline the plea agreement, to give a factual basis for the plea, and to list the elements of the offense and the penalties.

I.  THE PLEA AGREEMENT

The defendant will plead guilty to Count One of the Indictment charging him with the taking of a particular image. In return, the government will dismiss the remaining counts of the Indictment at the time of sentencing. The defendant agrees that under Guideline § 1B1.2, he committed all of the offenses charged in the Indictment, in addition to the offense of conviction, and that, for the purpose of determining the defendant's Sentencing Guidelines range, § 1B1.2(c) provides that these additional offenses shall be treated as if the defendant

had been convicted of them. The defendant will waive his right to trial and all of its attendant procedural safeguards and waive his right to appeal or attack collaterally this conviction, except for certain limited issues set forth in the agreement. The plea agreement also contains 20 stipulations regarding the application of the Sentencing Guidelines. The defendant also agrees to forfeit an Olympus Digital Camera, a Seagate FreeAgent external hard drive, Serial Number 2GEXR20X, and a Fujifilm Zip250 zip drive, labeled "A2. The plea agreement spelling out all of the terms is attached as Exhibit A to this memorandum.)

II. STATEMENT OF FACTS IN SUPPORT OF THE GUILTY PLEA

Victim 1 would testify that, while she was between the ages of six and nine, defendant, Thomas RAFFERTY took nude photographs of her in the attic of his Philadelphia, Pennsylvania home. She would testify that for some of the pictures, he would tie her hands to the rafters of the attic. He showed her some of the pictures on his computer and showed her how had altered or "morphed" them. If permitted, she also would testify that when she was between the ages of six and nine, RAFFERTY took her into his bedroom and exposed his penis to her. She also would testify that when she was approximately 12 years old her sister, Victim 2, disclosed to her that RAFFERTY had also taken nude photographs of her, as well. Victim 1 was 19 years old at the time she made her report.

Victim 2 is the sister of Victim 1 and would testify that when she was between the ages of four and nine, defendant RAFFERTY took nude photographs of her and inappropriately touched her, while she was sleeping. She too would testify about the defendant tying to the rafters of the attic for some of these photos.

Victim 2 would testify that she would visit RAFFERTY on the weekends she spent with her father, which was every other weekend. She would explain that when she slept at

2

RAFFERTY's residence he made her sleep on a mattress laid on the floor next to RAFFERTY's bed and RAFFERTY. RAFFERTY would sleep in the bed with his wife, Carol Rafferty. During the night when Victim 2 was sleeping, RAFFERTY would pick her up, bring her into his bed, and lay her on top of him. RAFFERTY would hug her close to him. Victim 2 would testify that they were both clothed, but she could feel RAFFERTY had an erection when he would press against her. RAFFERTY would put his hands down Victim 2's pants and feel her genitals. Victim 2 would testify about an occasion when RAFFERTY whispered in her ear "I did it with a nine year old once and she liked it." When Victim 2 was approximately nine years old she told RAFFERTY that she did not want to sleep with him in his bed anymore. This is when the sleepovers ceased.

Victim 2 also would testify that RAFFERTY took her and her cousin, Victim 3 into the attic of RAFFERTY's Philadelphia home, where he would take nude pictures of Victim 2 and Victim 3. Victim 2 would testify that RAFFERTY would call it a game and said that their clothing would mess up the photograph so they had to be nude.

Victim 2 would testify about an occasion, when she was approximately nine years old, when RAFFERTY took her into the house to change out of her wet bathing suit. RAFFERTY instructed her to take off her bathing suit top in front of him, but she refused. RAFFERTY pressed her to do this until she ultimately ran out of the room and away from him.

Victim 2 would testify that RAFFERTY bought her a lot of toys and treats while she was growing up.

Victim 2 would also testify that when she was between 4-9 years old, RAFFERTY showed her the nude pictures of herself on his computer. She saw the nude photographs of

3

herself and Victim 3, tied to the attic rafters as well as another one in which Victim 2 and Victim 3 were nude on a bathroom floor with their hands over their heads.

Victim 3 would testify corroborating the testimony of Victim 1 and Victim 2 about the defendant taking photos of her naked.

ICE agents would testify that on August 8, 2013, they executed a search warrant on the defendant's home and seized computers and digital storage media. A forensic examination has found 30 images of the Victims 1, 2, and 3, as young girls engaged in the lascivious exhibition of their genitals. Some of these pictures show the girls naked with their hands tied above their heads to attic rafters. The examination also found about 1,000 images of the girls that RAFFERTY had "morphed" into gothic scenes with sexual content. In some, he had taken images of the naked children lying down and placed them onto a slab, as if in a crypt. In many, he has also put in pictures of knives stuck into their chests with blood coming out. In some of them, he imposed his own image having sex with the victims. Finally, there more than 1,000 images of other children engaging in sexually explicit conduct.

The forensic examiner would testify that he found the images on Zip Disks and a Seagate hard drive. Representatives of Fujifilm, the current owner of the company that manufactured the Zip disk, and Seagate would testify that their products are manufactured outside the United States.

III.   ELEMENTS OF THE OFFENSE – 18 U.S.C. § 2251

The elements of the offense are that the defendant

      a. employed, used, persuaded, induced, enticed, or coerced
      b. a minor
      c. to engage in any sexually explicit conduct
      d. for the purpose of producing any visual depiction of such conduct

  e. the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce.

The term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(v) to include "lascivious exhibition of the genitals or pubic area of any person." In *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Ca.1986), *aff'd sub nom. United States v. Weigand*, 812 F.2d 1239 (9th Cir. 1987), the court developed six factors for the trier of fact to use in analyzing what constitutes a "lascivious exhibition of the genitals":

  (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

  (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

  (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

  (4) whether the child is fully or partially clothed, or nude;

  (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

  (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

636 F. Supp. 828, 832 (S.D. Cal. 1986). The Third Circuit has adopted the *Dost* factors for use in defining "lasciviousness." *See United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) ("no single factor should be given undue weight and that not all six factors have to be present for the image to be lascivious. However, more than one factor must be found."); *United States v. Knox*, 32 F.3d 733, 746 (3d Cir. 1994). Determining whether a visual depiction is "lascivious" is an issue of fact for the jury. *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987). The term lasciviousness is a "commonsensical term," *United States v. Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990) (citations omitted), and "[t]here is a

consensus among the courts that whether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make." *Id.* (citations omitted); *see also United States v. Thoma*, 726 F.2d 1191, 1200-01 (7th Cir. 1984) (holding that government was not required to introduce expert testimony to demonstrate that child pornography was obscene); *United States v. Thomas*, 613 F.2d 787, 794 (10th Cir. 1980) (same). The *Dost* factors do not include any reference to whether the visual depiction has any artistic, educational, or other societal value. Rather, this lasciviousness inquiry is focused on the image itself and the response the image intends to provoke in the pedophile viewer.

IV.   MAXIMUM SENTENCE

Because the events charged in Count One occurred before 2003, the maximum sentence is 20 years' incarceration, a 10 year mandatory minimum sentence (18 U.S.C. § 2251(d)), a 3 year period of supervised release (18 U.S.C. §§ 3559(a)(3) and 3583(b)(2)), a $250,000 fine (18 U.S.C. § 3571(b)(3)), and a $100 special assessment (18 U.S.C. § 3103(a)(2)(A)).

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

MICHAEL L. LEVY
Assistant United States Attorney
Chief, Computer Crimes

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the Government's Change of Plea Memorandum upon the following by electronic mail.

Catherine Henry, Esq.
Defender Association of Philadelphia
Suite 540 W, The Curtis Center
601 Walnut Street
Philadelphia, Pa 19106-2414

MICHAEL L. LEVY

July 10, 2014

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| V. | : | CRIMINAL NO. 13-571 |
| THOMAS RAFFERTY | : | |

GUILTY PLEA AGREEMENT

Under Rule 11 of the Federal Rules of Criminal Procedure, the government, the defendant, and the defendant's counsel enter into the following guilty plea agreement. Any reference to the United States or the government in this agreement shall mean the Office of the United States Attorney for the Eastern District of Pennsylvania.

1. The defendant agrees to plead guilty to Count 1 of the Indictment charging him with employing a minor with the intent that the minor engage in sexually explicit conduct, to produce a visual depiction of that conduct, in violation of 18 U.S.C. § 2251, and not to contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 18 U.S.C. § 2253 and 1467, all arising from the defendant's taking digital images of Victim 1 engaging in sexually explicit conduct. The defendant further acknowledges his waiver of rights, as set forth in the attachment to this agreement.

2. At the time of sentencing, the government will:

   a. Move to dismiss Counts 2-9, of the Indictment as to this defendant. The defendant waives the statute of limitations as to all counts to be dismissed under this agreement and agrees that if the defendant withdraws from, or successfully challenges, the guilty plea entered under this agreement, or if these counts are otherwise reinstated under the terms of this agreement,

neither the statute of limitations nor the Double Jeopardy Clause will bar prosecution on any of these dismissed counts.

        b.     Make whatever sentencing recommendation as to imprisonment, fines, forfeiture, restitution, and other matters which the government deems appropriate.

        c.     Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by or on behalf of the defendant at sentencing.

        d.     Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

3.     The defendant understands, agrees, and has had explained to him by counsel that the Court may impose the following statutory maximum and mandatory minimum sentences: 20 years' imprisonment, a 10 year mandatory minimum term of imprisonment, a 3 year period of supervised release, a $250,000 fine, and a $100 special assessment

4.     The defendant further understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 2 years per count of conviction. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

5. The defendant agrees to pay a fine as directed by the court. The defendant further agrees that forfeiture, restitution, fine, assessment, tax, interest, or other payments in this case do not constitute extraordinary acceptance of responsibility or provide any basis to seek a downward departure or variance from the applicable Sentencing Guideline range.

6. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. Accordingly:

    a. The defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that his financial statement and disclosures will be complete, accurate, and truthful.

    b. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

7. The defendant agrees to pay the special victims/witness assessment in the amount of $100 at such time as directed by the Court.

8. The defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose.

9. Pursuant to Guideline § 1B1.2, the parties stipulate that the defendant committed all of the offenses charged in the Indictment, in addition to the offense of conviction, and the defendant understands and agrees that, for the purpose of determining the defendant's Sentencing

Guidelines range, § 1B1.2(c) provides that these additional offenses shall be treated as if the defendant had been convicted of them.

10.     Pursuant to USSG § 6B1.4, the parties enter into the following stipulations under the Sentencing Guidelines Manual. It is understood and agreed that: (1) the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed:

For the Count of Conviction

    a.    For Count 1, the applicable guideline is § 2G2.1(a) and the base offense level is 27;

    b.    For Count 1, the minor involved was less than 12 years of age;

    c.    For Count 1, the minor involved was a relative of the defendant;

    d.    The parties agree and stipulate that, as of the date of this agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3E1.1(a).

    e.    The parties agree and stipulate that, as of the date of this agreement, the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and

permitting the government and the court to allocate their resources efficiently, resulting in a 1-level downward adjustment under USSG § 3E1.1(b).

For the Other Counts

  f. For Counts 2 and 3, the applicable guideline is § 2G2.1(a) and the base offense level is 27;

  g. For Counts 2 and 3, the minors involved were less than 12 years of age;

  h. For Counts 2 and 3, the minors involved were relatives of the defendant;

  i. For Counts 4 through 8, the applicable guideline is § 2G2.2 and the base offense level is 22;

  j. For Counts 4 through 8, the minors involved were less than 12 years of age;

  k. For Counts 4 through 8, the images involve sadistic conduct;

  l. For Counts 4 through 8, the defendant engaged in a pattern of activity involving the sexual abuse of a minor;

  m. For Counts 4 through 8, the offense involved the use of a computer;

  n. For Counts 4 through 8, the offense involved more than 600 images

  o. For Count 9, the applicable guideline is § 2G2.2 and the base offense level is 18;

  p. For Count 9, the collection of images includes children under the age of 12 years;

  q. For Count 9, some of the images involve sadistic conduct;

      ~~r.~~    For Count 9, the defendant engaged in a pattern of activity involving the sexual abuse of a minor;

      s.    For Count 9, the offense involved the use of a computer;

      ~~t.~~    ~~For Count 9, the offense involved more than 600 images;~~

11.    The defendant has been advised and understands that under the Sex Offender Registration and Notification Act (SORNA), a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment, and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both. This registration will also be a condition of any supervised release. The defendant also understands that independent of supervised release and the federal law requirements, he will be subject to state sex offender registration requirements, and that these federal law and state requirements may apply throughout his life.

12.    In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such

a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

      a.     Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

      b.     If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only a claim:

          (1)     that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above;

          (2)     challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

          (3)     challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court;

If the defendant does appeal pursuant to this subparagraph, no issue may be presented by the defendant on direct appeal other than those described in this subparagraph.

      c.     Notwithstanding the waiver provision set forth in this paragraph, the defendant may file a petition for collateral relief under 28 U.S.C. § 2255, but may only raise a claim that the attorney who represented the defendant at the time of the execution of this agreement and the entry of the defendant's guilty plea provided constitutionally ineffective assistance during any part of the representation.

     13.     The defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

14. The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

15. The defendant is satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty.

16. It is agreed that the parties' guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement, and that no additional promises, agreements, or understandings will be entered into unless in writing and signed by all parties.

_____
THOMAS RAFFERTY
Defendant

_____
CATHERINE HENRY, ESQ.
Counsel for Defendant

ZANE DAVID MEMEGER
United States Attorney

_____
PETER F. SCHENCK
Chief, Criminal Division
Assistant United States Attorney

_____
MICHAEL L. LEVY
Assistant United States Attorney

Date: 7/15/2014

Attachment

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-571 |
| THOMAS RAFFERTY | : | |

## ACKNOWLEDGMENT OF RIGHTS

I hereby acknowledge that I have certain rights that I will be giving up by pleading guilty.

1. I understand that I do not have to plead guilty.

2. I may plead not guilty and insist upon a trial.

3. At that trial, I understand

    a. that I would have the right to be tried by a jury that would be selected from the Eastern District of Pennsylvania and that along with my attorney, I would have the right to participate in the selection of that jury;

    b. that the jury could only convict me if all 12 jurors agreed that they were convinced of my guilt beyond a reasonable doubt;

    c. that the government would have the burden of proving my guilt beyond a reasonable doubt and that I would not have to prove anything;

    d. that I would be presumed innocent unless and until such time as the jury was convinced beyond a reasonable doubt that the government had proven that I was guilty;

    e. that I would have the right to be represented by a lawyer at this trial and at any appeal following the trial, and that if I could not afford to hire a lawyer, the court would appoint one for me free of charge;

    f. that through my lawyer I would have the right to confront and cross-examine the witnesses against me;

    g.  that I could testify in my own defense if I wanted to and I could subpoena witnesses to testify in my defense if I wanted to; and

    h.  that I would not have to testify or otherwise present any defense if I did not want to and that if I did not present any evidence, the jury could not hold that against me.

  4.  I understand that if I plead guilty, there will be no trial and I would be giving up all of the rights listed above.

  5.  I understand that if I decide to enter a plea of guilty, the judge will ask me questions under oath and that if I lie in answering those questions, I could be prosecuted for the crime of perjury, that is, for lying under oath.

  6.  I understand that if I plead guilty, I have given up my right to appeal, except as set forth in the appellate waiver provisions of my plea agreement.

  7.  Understanding that I have all these rights and that by pleading guilty I am giving them up, I still wish to plead guilty.

  8.  I acknowledge that no one has promised me what sentence the Court will impose. I am aware and have discussed with my attorney that, at sentencing, the Court will calculate the Sentencing Guidelines range (including whether any departures apply), and then, in determining my sentence, will consider the Guideline range and all relevant policy statements in the Sentencing Guidelines, along with other sentencing factors set forth in 18 U.S.C. § 3553(a), including

(1) the nature and circumstances of the offense and my personal history and characteristics;

(2) the need for the sentence imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

_____
THOMAS RAFFERTY
Defendant


_____
CATHERINE HENRY, ESQ.
Counsel for the Defendant


Dated: ___7/15/2014___

- 3 -